## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| PEOPLE OF GUAM,<br><br>vs.<br><br>**JOSEPH MANIBUSAN VILLORIA aka Joseph Manibusan Viloria aka Joe,**<br><br>Defendant. | CRIMINAL CASE NO. **CF0118-24**<br><br>**DECISION AND ORDER** |

### INTRODUCTION

This matter came before the Honorable Vernon P. Perez on October 7, 2024 and October 9, 2024, for hearing on Defendant **JOSEPH MANIBUSAN VILLORIA aka Joseph Manibusan Viloria aka Joe's** ("Defendant") Motion to Suppress. Present were Assistant Attorney General Sean E. Brown on behalf of the People of Guam ("the Government") and Defendant with counsel, Deputy Public Defender John P. Morrison. Having reviewed the pleadings, the arguments presented, and the record, the Court now issues the following Decision and Order.

### BACKGROUND

On March 1, 2024, Defendant was indicted with the following charges: (1) Possession with Intent to Deliver a Schedule II Controlled Substance (As a First Degree Felony); (2) Expired Registration (As a Violation); (3) Mandatory Insurance (As a Violation); (4) Defective Headlights (As a Violation); and (5) Operating a Vehicle without a Valid License (As a Violation). (Indictment, Mar. 1, 2024). These charges stem from the discovery of suspected

methamphetamine and drug paraphernalia during the effectuation of a traffic stop on or about February 23, 2024. (Decl. of Gloria A.L. Rudolph, Magistrate's Compl., Feb. 24, 2024).

On September 13, 2024, Defendant filed the instant Motion, moving the Court to suppress all evidence seized in this matter because no exception to the warrant requirement applies. On September 18, 2024, the Government filed its Opposition, arguing that the plain view exception applies.

On October 7, 2024, the Court heard sworn testimony from GPD Officers Roque Pangelinan ("Officer Pangelinan") and Nate Lorenzo ("Officer Lorenzo"). On October 9, 2024, the Court heard sworn testimony from Defendant. The witnesses testified to the following:

1. Around one or two a.m. on February 23, 2024, Officer Lorenzo observed a vehicle passing by (a 1995 4-Runner) with a defective headlight. Officer Lorenzo was in a patrol vehicle operated by Officer Pangelinan.

2. Officer Pangelinan conducted a U-turn. Officers Pangelinan and Lorenzo also observed defective tail lights on the vehicle and conducted a traffic stop along Y Sengsong Road.

3. Officer Pangelinan testified the vehicle was old and rusty, faded white. Officer Pangelinan testified that the vehicle was not adapted too much from a stock 4-Runner. Officer Pangelinan indicated it was possible that the vehicle may have been elevated two inches.

4. Officer Lorenzo testified the vehicle was a white 1995 Toyota 4-Runner that had about a two-inch lift.

5. Defendant testified he was driving along Y Sengsong Road heading towards NCS when he was pulled over.

6. Officers Pangelinan and Lorenzo did not know who the operator of the vehicle was prior to conducting the traffic stop.

7. Officer Lorenzo testified that he saw movement in the vehicle prior to their approach, which made him feel unsafe at the time.

8. Officer Lorenzo made contact with the operator through the passenger window.

9. Officer Pangelinan was standing near the driver's window observing.

10. The operator of the vehicle was later identified as Defendant. Officers Pangelinan and Lorenzo testified that Defendant did not have a driver's license, nor was he able to provide the registration or insurance for the vehicle.

11. Officer Pangelinan is 6'3".

12. Officer Lorenzo is 5'10".

13. Defendant is 5'6".

14. Officer Pangelinan testified that he could see Officer Lorenzo's face looking across the vehicle through the window.

15. Officer Lorenzo testified that the vehicle was below his head and the top of the door was at his chest. Officer Lorenzo testified that the vehicle was not lifted high where he could not see inside the vehicle. Officer Lorenzo denied having to peek inside the vehicle to see the floor board.

16. Officer Lorenzo testified that the area they were in was not lit very well and that he was using a flashlight to help him see.

17. Officer Lorenzo observed a glass pipe with a brown burnt substance sticking out of an open tool bag on the front passenger floor board. Officer Lorenzo could not recall the brand of the tool bag. Officer Lorenzo thought there could be a weapon in the tool bag based on the movements he observed before approaching the vehicle.

18. Officer Lorenzo testified that the tool bag was about half way full of tools. Officer Lorenzo testified that the glass pipe was sitting on top of wrenches.

19. Officer Lorenzo testified that in his experience, glass pipes with brown residue are used for methamphetamine.

20. Officer Lorenzo then asked Defendant to step out of the vehicle. Defendant was not under arrest at this time. Officer Pangelinan conducted a pat down and repositioned Defendant in the front of the vehicle away from the roadway.

21. Officer Lorenzo searched the bag.

22. Officer Lorenzo placed items on the passenger seat and asked Officer Pangelinan to confiscate the items within the tool bag. Officer Pangelinan confiscated multiple plastic baggies containing a while crystalized substance; the pipe; a digital scale; and U.S. currency in various bills. The substance was field tested and tested presumptive positive for methamphetamine. The total amount of methamphetamine was about 13 grams.

23. Officer Lorenzo later on cross-examination could not recall if the cash found came from the tool bag or Defendant's wallet.

24. Officer Pangelinan did not see the glass pipe until it was on the passenger seat.

25. Officer Pangelinan was illuminating Defendant's hands during the encounter.

26. Officer Lorenzo did not ask Defendant for consent to search the vehicle.

27. Officer Pangelinan acknowledged that glass pipes are available for legal sale at stores on island. Officer Pangelinan testified that there would be nothing to arrest an individual for if found with a clean pipe with nothing inside

28. Defendant testified he was driving an old Toyota 4-Runner. Defendant testified that he walked to his friend Jerry Blas's house to get a ride back home. Defendant's friend told him he could use the vehicle and he would pick it up later.

29. Defendant testified that he was at Jerry's house about twenty minutes prior to being pulled over.

30. Defendant testified that before he got into the vehicle, he and Jerry checked all the vehicle lights and they were all working. Defendant indicated that because it was an off-roading vehicle there were also flood lights on the bottom and spot lights on the top.

31. Defendant testified he asked Jerry whether the vehicle had any "tricks" because it was an off-roading vehicle and he had never driven it before.

32. Defendant testified that the 4-Runner was lifted very high and that he had to reach up inside the door to grab a handle to get into the vehicle. The 4-Runner did not have

running boards or side steps to assist with getting into the vehicle. The 4-Runner had bigger off-roading tires.

33. Defendant testified that he was pulled over coming out of Dededo.

34. Defendant testified that another vehicle had been pulled over by the officers prior to him being pulled over.

35. Defendant testified that the bigger police officer (Pangelinan) came to the driver's side door and asked him questions, including a request to produce his driver's license, registration and insurance. Defendant testified he produced a driver's license which didn't expire till 2025 and an expired car registration from the middle console. Defendant did not provide any car insurance.

36. Defendant did not know the car registration was expired until he passed the registration to the Officer.

37. Defendant indicated he was not concerned about the vehicle's registration and insurance because he was tired and he had walked to his friend's house from Yigo.

38. Defendant testified only the driver's window was open in the vehicle.

39. Defendant testified that Officer Pangelinan asked him to step out of the vehicle, go to the front of the vehicle and put his hands on the hood. Defendant complied.

40. Defendant did not see Officer Lorenzo until he was asked to step out of the vehicle by Officer Pangelinan. Defendant then observed Officer Lorenzo hop into the passenger side of the vehicle and look around.

41. Defendant testified the taller officer (Pangelinan) was looking up at him when he stood next to the driver's side window.

42. Defendant testified that the first officer went to the driver's side, pulled out his wallet and counted the money that was inside it. Defendant testified he had $260 in cash in the wallet but that only $168 was logged into evidence.

43. Defendant testified that after the officers counted the money, he was handcuffed and brought to the police vehicle.

44. Defendant testified that he did not see the tool bag on the passenger floor while driving the vehicle, nor did he put the tool bag in the vehicle.

45. Defendant denied telling Officer Lorenzo that he found the tool bag at the gas station. Defendant indicated he told Officer Pangelinan that he found a small empty pouch while he was walking which he had near his wallet in the vehicle.

46. Defendant acknowledged he had at least four prior drug convictions, but stated he had been out of the system for 11 years.

## DISCUSSION

The issue before the Court is whether the plain view exception to the warrant requirement applies. The Fourth Amendment to the U.S. Constitution "protects against unreasonable searches and seizures and is made applicable to Guam via section 1421(b)(c) of the Organic Act of Guam." *People v. Chargualaf*, 2001 Guam 1 ¶ 14 (internal citations omitted). "[T]he Fourth Amendment proscribes all unreasonable searches and seizures, and it is a cardinal principle that searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment...." *People v. Camacho*, 2004 Guam 6 ¶ 16 (quoting *United States v. Ross,* 456 U.S. 798, 825 (1982)). "The general rule that warrantless searches are presumptively unreasonable, however, is subject to certain well established exceptions, such as 'good faith' and 'plain view,' which find their roots in Fourth Amendment jurisprudence." *Id.* (citations omitted). "[W]arrantless seizures are permissible pursuant to the plain view doctrine." *Id.* at ¶ 20. "If an article is already in plain view, neither its observation nor its seizure would involve any invasion of privacy." *Horton v. California,* 496 U.S. 128, 133 (1990). Vehicles are also covered by the plain view exception. *See Texas v. Brown,* 460 U.S. 730 (1983). "While the interior of an automobile is not subject to the same expectations of privacy that exist with respect to one's home, a car's interior as a whole is nonetheless subject to Fourth Amendment protection from unreasonable intrusions by the police." *New York v. Class,* 475 U.S. 106, 114–15 (1986). For the plain view exception to apply, three elements must be satisfied: (1) the officer must arrive at the place from which the evidence could be plainly viewed without violating the Fourth Amendment; (2) the evidence must be in "plain view" and its incriminating character must also

be immediately apparent; and (3) the officer must also have a lawful right of access to the object itself. *Camacho*, 2004 Guam 6 ¶ 20. "[A]ll three prongs of the test must be satisfied." *Id.* at 27. "[T]he People bear the burden of proof when a warrantless search or seizure occurs." *People v. Santos*, 1999 Guam 1 ¶ 51.

In this case, Officers Pangelinan and Lorenzo conducted a traffic stop after observing a Toyota 4-Runner on the road with a defective headlight and defective taillights late at night. This provided the officers with probable cause to believe that a traffic violation had occurred and a valid basis to be standing next to Defendant's vehicle to ask him for his driver's license, car registration, and insurance.[1] *See* 16 G.C.A. § 3201. Although Defendant testified that he and Jerry tested the lights prior to him driving the vehicle away, the Court is not convinced that Defendant would test all the vehicle lights but not also check if the vehicle had valid registration or insurance. Officer Lorenzo testified that he was able to see the glass pipe from outside the vehicle and that his body did not enter the vehicle at all in order for him to see the pipe. Officer Lorenzo testified that he observed the glass pipe inside an open tool bag on the front passenger side floor while speaking with Defendant. The officer "must discover incriminating evidence 'inadvertently' ... he may not 'know in advance the location of [certain] evidence and intend to seize it,' relying on the plain view doctrine only as a pretext." *Brown*, 460 U.S. at 737 (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 470 (1971)) (alterations in original). Although Defendant testified that the 4-Runner was lifted and it would not have been possible for Officer Lorenzo to see the passenger floorboard, both Officer Lorenzo and Officer Pangelinan testified that they were able to see inside the vehicle and that the vehicle was not lifted so high. Thus, the Court finds that from the vantage point of an individual looking through the passenger side

---

[1] Brief investigative detentions are permitted under the Fourth Amendment "when a police officer has reasonable suspicion that an individual was engaged in or is about to be engaged in illegal conduct." *People v. Johnson*, 1997 Guam 9 ¶ 4 (citing *Terry v. Ohio*, 392 U.S. 1 (1968)). As a general matter, the decision to stop an automobile without a warrant is reasonable where the police have probable cause to believe that a traffic violation has occurred. Further, it is reasonable to stop a car where the police merely have a reasonable suspicion to believe the driver has committed a traffic violation." *Chargualaf*, 2001 Guam 1 ¶ 17 (citations omitted). "In order to determine whether an officer had reasonable suspicion sufficient to warrant a traffic stop, the court must look at the totality of the circumstances, taking into account the facts known to the officers from personal observation." *Johnson*, 1997 Guam 9 ¶ 6 (citation and quotation marks omitted). Furthermore, the reasonable suspicion must exist at the time the stop was initiated. *Id.* (citation omitted).

window from outside the vehicle, the pipe inside the tool bag was in plain view. Officer Lorenzo also testified to observing the driver of the vehicle make movements prior to their approach to the vehicle. The Court finds it plausible that the pipe was placed in the bag prior to the officers' approach to the vehicle. While Defendant testified that he did not notice the tool bag in the car and that he did not bring the tool bag into the car, the Court does not find it likely that Defendant's friend would have allowed him to borrow the vehicle and drive away with thirteen grams of methamphetamine in the front passenger floorboard area. Accordingly, the Court finds that Officer Lorenzo plainly viewed the pipe without violating the Fourth Amendment.

The Court next turns to whether the incriminating character of the evidence was immediately apparent. Defendant argues that the observation of a glass pipe alone does not give rise to a finding of probable cause. (Mot. Suppress at 4). Officers "who seize an article must be presently aware of some specific and articulable fact from which a rational link between the item seized and criminal behavior can be inferred." *People v. Superior Court (Meyers)*, 598 P.2d 877, 880 (Cal. 1979). The "extension of the original justification is legitimate only where it is immediately apparent to the police that they have evidence before them; the 'plain view' doctrine may not be used to extend a general exploratory search from one object to another until something incriminating at last emerges." *Horton*, 496 U.S. at 136. The Court acknowledges that a clean or plain glass pipe, on its own, could be used for legal activity, e.g., to smoke or ingest a legal substance such as tobacco or marijuana. However, Officer Lorenzo testified that the glass pipe he saw had brown residue, which in his experience, indicated it was used for methamphetamine. Further, Officer Lorenzo testified he never thought about the pipe being used for anything but methamphetamine. "In considering whether evidence was apparent to the executing officers, courts should be duly mindful of the executing officers' particular, subjective training and experiences." *United States v. Szymkowiak*, 727 F.2d 95, 98 (6th Cir. 1984) (citations and quotation marks omitted). "[P]robable cause is a flexible, common-sense standard. It merely requires that the facts available to the officer would warrant a man of reasonable caution in the belief that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such belief be correct or more likely true than false. A

practical, nontechnical probability that incriminating evidence is involved is all that is required." *Brown*, 460 U.S. at 742 (internal citations and quotation marks omitted). Therefore, the Court finds that the incriminating character of the evidence was immediately apparent to Officer Lorenzo.

Lastly, the Court turns to whether the officers had a lawful right of access to the object at issue. The Court finds that this element is also met because Officer Lorenzo believed the pipe was evidence of methamphetamine. *See Brown*, 460 U.S. at 739 ("our decisions have come to reflect the rule that if, while lawfully engaged in an activity in a particular place, police officers perceive a suspicious object, they may seize it immediately."). Therefore, the Court finds that the seizure was authorized by the "plain-view" doctrine.

## CONCLUSION

For the foregoing reasons, the Court hereby DENIES Defendant's Motion to Suppress.

**IT IS SO ORDERED** this 20TH day of November, 2024.

_____
HONORABLE VERNON P. PEREZ
Judge, Superior Court of Guam

**SERVICE VIA E-MAIL**

I acknowledge that an electronic Copy of the original was e mailed to

_AG, PDSC_

_____

Date 11/26/24 Time. 2:28pm

Albert Calcho c—

Deputy clerk , Superior Court of Guam

*People v. Villoria*
Case No. CF0118-24
Decision and Order